Jane Berry Donohue died in Snohomish county, on April 19, 1925. She had been for many years a resident of that county. She was frugal and through her own ability acquired a competence, leaving an estate inventoried at $20,000. She had relatives in this country and some in Ireland, but had no close contact with any of them for about a year before her death, due partly to the fact that, after a paralytic stroke, some of them desired to place her in an asylum. For several years before her death, Frank Donohue had taken care of her, she being a sufferer from diabetes, which left an open wound in one of her feet, and she expressed a desire to marry him, although she was approximately eighty years of age and he about fifty. *Page 424 
She frequently told friends that she did not desire to leave any of her property to her relatives, but wanted all of it to go to Donohue. On March 17, 1925, she married him and two days later executed a will bequeathing one hundred dollars each to two friends, and leaving the residue to her husband. This, it will be seen, was just thirty days prior to her death.
On May 13, 1925, Margaret Norling, a sister of the decedent, brought this action to contest the will, which had in the meantime been presented for probate, and alleged that the decedent was at the time of making her will of unsound mind and incompetent to make it, and that Frank Donohue had unduly influenced her by entering into a marriage contract with her when she was unable to understand the nature of her act. At the close of the trial, after hearing evidence from both sides, the trial court dismissed the contest, holding that the dismissal should have been entered at the close of the contestant's case. The judgment entered therein has been appealed from.
Appellant admits that "it is needless to cite authorities. This case is wholly one of fact." With this contention we must agree. The rule in such a case is that we will not overrule the findings of the trial court, unless we can say that the evidence preponderates against its findings.
[1] It will serve no useful purpose to here set out all the facts relied upon by appellant to show that the decedent was of unsound mind. They consisted mainly of contradictory statements of the decedent as to her age; the fact that she had Donohue arrested upon a charge of stealing four hundred dollars from her early in March; and then furnished the money to bail him out; inconsistent reasons thereafter given for causing his arrest; her sickness; statements of several persons *Page 425 
who thought she was not able to realize what she was doing; her dislike and disinheritance of her relatives, and her subsequent marriage to Donohue.
Opposed to these facts offered by the contestant was the testimony of a great number of people that her mind was as active and keen as it had been in years; that she took charge of, and handled, all of her financial affairs up to and during the time in controversy; that she caused Donohue's arrest because of anger at the time; that he was the only person who had continuously cared for her; that the marriage was the consummation of a wish of several years standing, and other evidence of like character.
We have carefully read the record and are satisfied that the decision of the trial court follows the preponderance of the evidence. In re Williams' Estate, 142 Wn. 637, 254 P. 236.
Much stress has been laid by the appellant upon the claimed fact that the marriage alone almost conclusively shows incompetency upon the part of the decedent. It is said that for a woman who is in her last sickness to marry a man many years her junior is, to say the least, unnatural. But this must depend upon the circumstances of the case. We have already noticed that for several years he had lived most of the time at her home; that he had cared for her during all of her sickness; that she was not on good terms with her relatives in this country; that she did not wish them to inherit any of her property; that she had expressed a desire that Donohue should have it all, and that for several years she had wished to marry him. Under such circumstances it would not be unnatural if she desire to marry him for the sole purpose that he might inherit through her. Instances of such conduct, while not common, are not at all unknown. Marriage *Page 426 
sometimes takes place upon the death-bed of one of the parties with full knowledge of the participants that neither of them will ever be able to be a spouse in other than name, and that for a very short space of time, — perhaps but a few minutes. But the right to contract such a marriage, if the mind is capable of contracting, has never been denied.
The world at large may look askance at such a union, but the law, which does not concern itself with the incongruity thereof, looks only to the question of legal obstacles, and if none there be must sanction it as within the rights of the parties to contract if they see fit.
Other questions are raised, but we think they do not require a separate discussion.
Judgment affirmed.
MACKINTOSH, C.J., PARKER, and TOLMAN, JJ., concur.